IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| CERTAIN UNDERWRITERS AT LLOYD'S LONDON, <br><br> Plaintiff, <br><br> v. <br><br> POWER HOME SOLAR, LLC D/B/A PINK ENERGY, F/K/A POWER HOME, SOLAR & ROOFING, KRISTEN NIGHTINGALE and STEVEN NIGHTINGALE, USAA GENERAL INDEMNITY COMPANY <br><br> Defendants. | **COMPLAINT FOR DECLARATORY JUDGMENT** <br><br> Case No. 3:25-cv-1590-SAL <br><br> (Non-Jury) |

Plaintiff, Certain Underwriters at Lloyd's London subscribing to policy number GLL-10784-00, by and through its undersigned attorneys, complaining of Defendants, POWER HOME SOLAR, LLC D/B/A PINK ENERGY, F/K/A POWERHOME SOLAR & ROOFING, KRISTEN NIGHTINGALE, STEVEN NIGHTINGALE, AND USAA GENERAL INDEMNITY COMPANY, would respectfully allege and show unto the Court as follows:

## NATURE OF ACTION

1. CERTAIN UNDERWRITERS AT LLOYD'S, LONDON SUBSCRIBING TO POLICY NUMBER GLL-10784-00 ("Underwriters") brings this Complaint for Declaratory Judgment pursuant to 28 U.S.C. §§ 2201, *et seq*. and Rule 57 of the Federal Rules of Civil Procedure seeking a declaration with respect to the rights of the parties under a commercial general liability policy issued to Defendant, POWER HOME SOLAR, LLC ("PHS"), with respect to a Third-Party Complaint filed against PHS by USAA GENERAL INDEMNITY COMPANY, individually, and as Subrogee of KRISTEN NIGHTINGALE, AND STEVEN NIGHTINGALE.

2. Underwriters issued policy no. GLL-10784-00 to "Power Home Solar, LLC" as the first named insured, effective from November 15, 2020 to November 15, 2021 (the "Underwriters Policy"). (A true and correct copy of the Underwriters Policy is attached hereto as **Exhibit A**).

3. The Third-Party Complaint alleges negligence on the part of PHS related to the installation of residential solar panels at the home of KRISTEN NIGHTINGALE AND STEVEN NIGHTINGALE.

4. Underwriters seeks a declaratory judgment that it owes no duty to defend or indemnify PHS in connection with the Third-Party Complaint as PHS cannot satisfy the Policy's $250,000 self-insured retention through payment of "claim expense" and damages. Underwriters further seeks a declaration that it can withdraw from providing a defense to PHS for the Third-Party Complaint.

## JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1332(a), because there is complete diversity of citizenship amongst Plaintiff and Defendants. The amount in controversy exceeds $75,000, exclusive of interests and costs.

6. Venue is proper in this district under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims in this action occurred in this district.

## THE PARTIES

7. Underwriters is, and at all relevant times has been, a foreign citizen located in London, England.

8. Upon information and belief, PHS is a Delaware limited liability company that has three members located in North Carolina and one member located in Tennessee.

9. Upon information and belief, Kristen and Steven Nightingale (the "Nightingales") are domiciled in South Carolina.

10. Upon information and belief, USAA General Indemnity Company ("USAA") is a company organized and existing under the laws of Texas with its principal place of business in Texas.

## FACTUAL BACKGROUND

A. **THE NIGHTINGALE LAWSUIT**

11. On December 7, 2022, the Nightingales filed a Complaint against USAA Casualty Insurance, Co. ("USAA Casualty") and others alleging that on August 18, 2021, solar panels installed by PHS on the Nightingales' home caught fire as a result of a failure in the design and manufacture of the solar panels. (A true and correct copy of the Complaint filed in the Nightingale Lawsuit is attached hereto as **Exhibit B**).

12. The Complaint alleges that the fire caused substantial damage to the Nightingales' home and their solar panel system.

13. The Complaint alleges that USSA Casualty insured the Nightingales' home and their personal effects in the home.

14. The Complaint alleges that USAA Casualty refused to reimburse the Nightingales for the damage to their solar panel system as required by the policy of insurance USAA Casualty issued to the Nightingales.

15. The Complaint alleges that USAA Casualty's refusal to pay constitutes bad faith and alleges that the Nightingale's are entitled to damages against USAA Casualty, including actual damages, consequential damages, and punitive damages.

B.  **THIRD-PARTY COMPLAINT**

16. On June 3, 2024, USAA, individually, and as Subrogee of the Nightingales, filed a Third-Party Complaint against PHS. (A true and correct copy of the Third-Party Complaint is attached hereto as **Exhibit C**).

17. The Third-Party Complaint alleges that PHS selected, designed, installed, distributed and/or sold the residential solar panel and energy system at the Nightingales' home.

18. The Third-Party Complaint alleges that the fire which occurred at the Nightingales' home on August 18, 2021 was caused by a defective and unreasonably dangerous SnapRS unit/product that was improperly designed and/or installed by PHS.

19. The Third-Party Complaint alleges that the Nightingales filed a property insurance claim with USAA and that USAA made a payment to the Nightingales in the amount of $403,184.99.

20. The Third-Party Complaint alleges that PHS is liable to USAA for this amount.

21. The Third-Party Complaint asserts multiple causes of action against PHS including negligence and gross negligence, breach of implied warranty of merchantability, breach of implied warranty of fitness for a particular purpose, strict liability, and contribution and indemnity.

C.  **THE BANKRUPTCY ACTION**

22. On October 7, 2022, a bankruptcy case styled, *In Re: Power Home Solar, LLC*, Case No. 22-50228 Chapter 7, was filed in the United States Bankruptcy Court for the Western District of North Carolina, Charlotte Division (the "Bankruptcy Action").

23. On November 30, 2023, USAA filed a Motion for an Order Granting Limited Relief from Automatic Stay (the "Bankruptcy Motion"). (A true and correct copy of the Bankruptcy Motion is attached hereto as **Exhibit D**).

24. The Bankruptcy Motion alleges that "upon information and belief, PHS had numerous insurance policies in effect at the time the loss occurred at the Nightingale House which, arguably, would provide coverage to Plaintiff USAA GIC as a result of PHS's negligent and wrongful conduct."

25. In the Bankruptcy Motion, USAA agreed not to proceed against PHS or its assets, other than available insurance, to recover a judgment or award of damages resulting from the Third-Party Complaint.

26. On December 27, 2023, the court in the Bankruptcy Action granted the Bankruptcy Motion (the "Bankruptcy Order"), which limits USAA to recovering a judgment against PHS from PHS's insurance policies. (A true and correct copy of the Bankruptcy Order is attached hereto as **Exhibit E**).

27. Underwriters advised PHS that it was PHS's obligation to satisfy the SIR, including defending itself against the Third-Party Complaint.

28. PHS has failed to retain defense counsel to defend against the Third-Party Complaint.

29. Underwriters therefore retained defense counsel to defend PHS, while reserving rights under the Policy.

## THE UNDERWRITERS POLICY

30. Underwriters issued the Underwriters Policy. *See* Ex. A.

31. Pursuant to the Insuring Agreement, the Underwriters Policy generally provides coverage for those amounts that the insured becomes legally obligated to pay as damages for "property damage" caused by an "occurrence," where the damage takes place during the policy period. *See* Ex. A, p. 033.

32. The Underwriters Policy contains the following exclusions commonly known as the "business risk" exclusions:

j. **Damage To Property**

"Property damage" to:
       * * *
**(5)** That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or
**(6)** That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.
       * * *
Paragraph **(6)** of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".
       * * *

k. **Damage To Your Product**

"Property damage" to "your product" arising out of it or any part of it.

l. **Damage To Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard."

This exclusion does not apply if the damaged work or the work out of which the damages arises was performed on your behalf by a subcontractor.

*See* Ex. A, pp. 036-037.

33. The Underwriters Policy defines the terms "your work," "your product," as follows:

**22.** "Your work":

a. Means:
**(1)** Work or operations performed by you or on your behalf; and
**(2)** Materials, parts or equipment furnished in connection with such work or operations.

b. Includes:

6

   **(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work", and

   **(2)** The providing of or failure to provide warnings or instructions.

* * *

**21.** "Your product":

 **a.** Means:
  **(1)** Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:
   **(a)** You;
   **(b)** Others trading under your name; or
   **(c)** A person or organization whose business or assets you have acquired; and
  **(2)** Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

 **b.** Includes:
  **(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and
  **(2)** The providing of or failure to provide warnings or instructions.

 **c.** Does not include vending machines or other property rented to or located for the use of others but not sold

*See* Ex. A, p. 048.

  34. The Underwriters Policy includes coverage with limits of $1 million per occurrence for Bodily Injury and Property Damage and $3 million in the General Aggregate. *See* Ex. A, p. 006.

  35. The Underwriters Policy contains a Self-Insured Retention – Claims Expenses Eroding The Retention endorsement (the "SIR Endorsement"), which modifies Underwriters' obligations under the Underwriters Policy. *See* Ex. A, pp. 024-029.

  36. The SIR Endorsement provides, in pertinent part, as follows:

**SELF-INSURED RETENTION – CLAIM EXPENSES ERODING THE RETENTION**

**Schedule Each Occurrence "Self-Insured Retention" Amount:** $250,000
**Each Claim "Self-Insured Retention" Amount:** $N/A
**Aggregate "Self-Insured Retention" Amount** (if applicable): $N/A
**Third Party Claims Administrator:** Sedgwick
**Address:** 12650 Ingenuity Drive, Orlando, FL 32826
**Contact:** Kristin N. Smith
**Telephone:** 352-805-3744

This insurance is subject to the following additional provisions. In the event of conflict with any provision elsewhere in the coverage form, the provisions of this endorsement will control the application of insurance to which the coverage part applies.

**I. COVERAGE:**
Our obligation to pay sums under **SECTION I, 1. Insuring Agreement** of this Coverage Part for damages to which this insurance applies, and our obligation to defend you against any claim or "suit" because of those damages is changed as set out below.

   **1.** We will only pay that portion of the "Ultimate Net Loss" to which this insurance applies that is in excess of the "Self-Insured Retentions" shown in the Schedule above. Before we have any obligation to pay any of the "Ultimate Net Loss", you must pay the full amount of the applicable "Self-Insured Retention" Amount shown in the Schedule regardless of Insolvency or bankruptcy by you or the number of claims or "suits" or amount of "claims expense". In no event shall this policy be obligated to satisfy your obligations for payment of "Self Insured Retention" amounts or "claim expense".

   **a.** The **Each Occurrence "Self-Insured Retention" Amount** listed in the Schedule applies to
   **(1)** All covered damages and "claims expense" as a result of an "occurrence" under the **COMMERCIAL GENERAL LIABILITY COVERAGE PART** and/or the **PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART**, and/or […]

*See* Ex. A, p. 024.

   37.   The Additional Definitions section of the SIR Endorsement provides as follows:

**III. Additional Definitions**

   The following definitions are added to **SECTION V. DEFINITIONS**:

1. "Claims expense" means all fees, costs and expenses incurred in the investigation, defense and settlement of any claim or "suit" under this insurance, including but not limited to attorney's fees, court reporter fees, charges for independent medical examinations, and expert witnesses. "Claims expense" will not include salaried employees, counsel on retainer and office expenses of either you or us.

2. "Self-Insured Retention" means the amount of liability shown in the Schedule above for either the **Each Occurrence "Self-Insured Retention" Amount** or the **Aggregate "Self-Insured Retention" Amount** (if shown) which you shall become legally obligated to pay because of "bodily injury", "property damage", "advertising injury", "personal injury", "medical payments" or any other such coverage included in the policy sustained by one or more persons or organizations.

3. "Ultimate Net Loss" means the sum or sums, after deduction of all collectible recoveries or salvage, that are:
   **a.** In excess of the "Self-Insured Retention"; and
   **b.** Actually paid or that you are obligated to pay as damages and "claims expense" in the investigation and satisfaction of claims or "suits" to which this insurance applies.

*See* Ex. A, p. 029.

38. The Defense and Settlement of Claims and Suits section of the SIR Endorsement provides as follows:

    **2. Defense and Settlement of Claims and Suits**

    **a. Your obligations:**

    (1) The defense of claims and "suits" seeking damages to which this policy applies that are within the "Self-Insured Retention" and payment of all "claims expense" that are within the "Self-Insured Retention" are your obligations, however;
    ***
    **(2)** Your responsibility to pay all amounts of settlements and judgments, including "claims expense", within the "Self-Insured Retention" shall not be affected by our election to assume the handling of any claim or suit.

*See* Ex. A, p. 025.

39. The SIR Endorsement further states:

    **b. Defense by us:**

> **(1)** We have the right and the duty to investigate and defend that part of any claim or "suit" that seeks damages to which this insurance applies that are in excess of the "Self-Insured Retention", or which, in our opinion, may expose us to a payment under this policy.
> **(2)** Our duty to investigate and defend claims or "suits" and/or to pay "claims expense" applies only after the "Self-Insured Retention" has been paid out in satisfaction or settlement of claims or "suits", or paid out in "claims expense".

*See* Ex. A, p. 026.

40. The Settlement section of the SIR Endorsement provides, in pertinent part, as follows:

> **d. Settlement:**
> ***
> **(2)** We shall be liable only for the amount of damages and "claims expense" in excess of the "Self-Insured Retention" amounts as applicable, shown in the Schedule above, up to the applicable Limits of Insurance shown in the Declarations of this policy and as described in **SECTION III – LIMITS OF INSURANCE.**.
> **(3)** Payments by others, including but not limited to additional insured's and insurers, cannot be used to settle a claim or satisfy a judgment owed by an insured within the "Self-Insured Retention". Only payments by the first Named Insured can settle a claim or satisfy a judgment owed by an insured within the "Self-Insured Retention".

*See* Ex. A, p. 027.

## COUNT I – DECLARATORY JUDGMENT
### (Underwriters Owes No Coverage Until The SIR Is Satisfied By PHS)

41. Underwriters adopts and re-alleges the allegations in Paragraphs 1 through 40 as if fully restated and set forth herein.

42. The SIR Endorsement of the Underwriters Policy states that the SIR is $250,000.

43. The Underwriters Policy provides that Underwriters will only pay that portion of the "Ultimate Net Loss" that is in excess of the SIR.

44. The "Ultimate Net Loss" requires that the sums be in excess of the SIR and actually paid as damages and "claims expenses" in the investigation and satisfaction of claims or "suits."

45. Underwriters has no obligation to pay any of the "Ultimate Net Loss" until the insured has paid the full amount of the SIR, regardless of insolvency or bankruptcy of the insured, and under no circumstance shall Underwriters be responsible for the payments of the SIR.

46. The Underwriters Policy provides that the insured is obligated to pay for the defense of "suits" seeking damages within the SIR.

47. The Underwriters Policy provides that Underwriters has the right and duty to investigate and defend any part of a "suit" seeking damages to which this insurance applies that is in excess of the SIR. However, this duty only applies after the SIR has been paid in satisfaction or settlement of claims or "suits," or paid out in "claims expense."

48. The Underwriters Policy provides that the insured cannot satisfy the SIR with any payments from others, to include additional insureds or insurers.

49. As such, it is a condition precedent to coverage that the Named Insured must personally satisfy the SIR before Underwriters has any obligations under the Underwriters Policy.

50. An actual controversy exists between Underwriters, USAA and PHS, and by the terms and provisions of 28 U.S.C. §§ 2201, 2202, this Court is vested with the power to declare the rights and liabilities of the parties hereto, including that the insured must personally satisfy the $250,000 SIR before Underwriters owes any obligations under the Underwriters Policy.

## COUNT II – DECLARATORY JUDGMENT[1]
### Underwriters Owes No Duty To Defend Or Indemnify PHS

51. Underwriters adopts and re-alleges the allegations in Paragraphs 1 through 50 as if fully restated and set forth herein.

52. PHS filed for chapter 7 bankruptcy.

53. To the extent USAA is awarded judgment against PHS, USAA cannot seek recovery of that judgment from PHS pursuant to Bankruptcy Order.

54. Pursuant to the SIR Endorsement, Underwriters has no obligation to pay any of the "Ultimate Net Loss" until the insured has personally paid the full amount of the SIR, regardless of insolvency or bankruptcy of the insured, and under no circumstance shall Underwriters be responsible for the payments of the SIR.

55. PHS cannot satisfy the SIR for damages awarded in favor of USAA because of the Bankruptcy Order.

56. Because PHS cannot satisfy the SIR, Underwriters does not owe a duty to defend or indemnify PHS in connection with the Third-Party Complaint.

57. Because Underwriters does not owe a duty to defend or indemnify PHS in connection with the Third-Party Complaint, Underwriters cannot be liable to USAA as a judgment creditor of PHS.

58. An actual controversy exists between Underwriters, USAA and PHS, and by the terms and provisions of 28 U.S.C. §§ 2201, 2202, this Court is vested with the power to declare

---

[1] Underwriters notes that additional provisions and exclusions of the Underwriters Policy are applicable to this matter, however, they are not dispositive on the issue of whether coverage is owed to PHS and therefore not addressed in Underwriters' Complaint.

the rights and liabilities of the parties hereto and to give such other and further relief as may be necessary.

  WHEREFORE, Plaintiff, Underwriters, respectfully prays that this Honorable Court:

  a. Determine and adjudicate the rights and liabilities of the parties hereto with respect to the Underwriters Policy;

  b. Find and declare that PHS must personally satisfy the $250,000 SIR before Underwriters owes any obligations under the Underwriters Policy;

  c. Find and declare that Underwriters does not owe a duty to defend or indemnify PHS under the Underwriters Policy in connection with the Third-Party Complaint because PHS cannot satisfy the SIR;

  d. Find and declare that Underwriters can withdraw the defense being provided to PHS in the Third-Party Complaint;

  e. Find and declare that USAA, as potential judgment creditor of PHS, cannot recover a judgment against PHS under the Underwriters Policy; and

  f. Grant Underwriters such other and further relief that the Court deems just and proper under the facts and circumstances.

      Respectfully submitted,

      s/Jennifer E. Johnsen
      Jennifer E. Johnsen (Fed. Bar No. 5427)
      GALLIVAN, WHITE & BOYD, P.A.
      55 Beattie Place, Suite 1200 (29601)
      P.O. Box 10589
      Greenville, SC  29603
      (864) 271-9580
      jjohnsen@gwblawfirm.com

March 11, 2025

      -and-

      Brian C. Bassett (*Pro Hac Vice will be filed*)
      bbassett@tlsslaw.com
      Jeremy S. Macklin (*Pro Hac Vice will be filed*)
      jmacklin@tlsslaw.com
      Traub Lieberman Straus & Shrewsberry, LLP.
      71 S. Wacker Drive, Suite 2110
      Chicago, IL 60606
      P: 312-332-3900/F: 312-332-3908